Good morning. My name is Josh Hamilton. I'm here. I represent Ruperto Guillen-Cervantes. If I could, before I get started, I'd ask to reserve two minutes for rebuttal. As I said, I represent Defendant Guillen-Cervantes, who is currently serving a 37-month sentence in the Bureau of Prisons, a sentence which was premised in large part upon a nine-level sentencing enhancement based upon, as the government alleged, 114 aliens that were attributable to him for sentencing purposes. This was an alien smuggling case. And frankly, there were some issues with how the government and the district court relied upon that, the government's claim, that 114 aliens were indeed smuggled. How did that number get derived? Well, that's one of the problems, Judge, is that it's frankly a little bit unclear. My understanding, as best as I can tell, is that the main case agents synthesized that number by reviewing one of, I believe, there was eight or nine poll camps put up by investigators, one of which was pointed at Defendant's business, and then they took a number for how many suspected aliens they saw on the video, then extrapolated  But that's not what he testified to. The only foundation for that is a statement during the forfeiture hearing by the assistant who clearly had no recollection of the sentencing issue and how the amount was computed. Frazier's testimony is quite different and, if I may say, quite unusual. He used his surveillance, a poll camera. He coordinated with the wiretaps that they were listening to, and they did a he did a head count. He didn't do any math. It was not a question of mathematics. It was a question of observation and interpretation. So I don't understand your statement. Well, I've not done it. Frankly, he did a head count. He didn't do a head count to 114. He did a head count of some and then took that number and multiplied it by the length of time with which he believed the defendant to be a member of the conspiracy. That said, he was never able to say when the defendant actually joined the conspiracy if he just sort of said, well, this is the date that the wires were up, so I'm looking at that. I can't tell you when he joined the conspiracy or not. His approach was rather conservative. Whether he got it right or wrong, his approach was rather conservative. Well, that's what he says. But regardless of whether, in his opinion, it's a conservative estimate doesn't necessarily mean that it's a real number. The government alleged a real number. And frankly, I believe that they're bound to it. They said 114 aliens. They need to prove that up. And another issue that the government faced in this with respect to Defendant Ian Cervantes is that his membership in the conspiracy was one of his roles, as alleged by the government, was to provide legal transportation to intermingle legal passengers with unlawful aliens to further the goals of the conspiracy. If, in fact, what is being viewed on the poll cam were legal passengers, then they would not be counted in the 114 number. Let's assume that you're right, and I think the record is a bit muddled as to whether the agents actually watched the poll cameras and, along with other evidence, actually counted up 114 aliens versus doing some sort of extrapolation method. So let's assume that it is a number that's arrived at by extrapolation. Why is that clear error? That happens all the time, that agents would then review voluminous documents and evidence and then try to make an estimate, the best estimate that they can, as to how many aliens went through during the course of that period of time during the conspiracy in which the Defendant participated. Well, the government's had the burden to prove these facts in order to impose a sentencing enhancement. This sentencing enhancement issue, as I said, is nine levels. So it took the Defendant, who is criminal history category 1, from being an unadjusted offense level 12, and it jumped him all the way to offense level 21. So it took what would be, I don't have the guidelines in front of me, but I believe a 10 to 16-month range, and immediately, just by imposition of that one enhancement, jumped it to 37 to 46 months, which is category 1, offense level 21. I want to ask you another question. The number was derived for the period May 1, 2009, to April 15, 2010, and you had said earlier in your argument that it wasn't clear that your client had joined the conspiracy by May 1st of 2009. Why is there not evidence that he did so? That he had joined the conspiracy? By May 1st, 2009. Well, Judge, he was convicted of being of conspiracies. Right. And what was the date of the conspiracy for which he was convicted? Well, it was, I believe, from like 2005, roughly, to 2010. Okay. So what is the basis of your statement earlier in your argument that it wasn't clear that he would be responsible for this time period as a member of the conspiracy? He would only be responsible under the guidelines for acts of the conspiracy during the time period for which he was a member if he, say, joined in 2009. But that's my question. You just told me that it was 2005 forward. And these numbers were derived 2009 forward. So I don't understand where you get the argument that he might not have been a member of the conspiracy. My point is if the conspiracy lasted from, let's say, 2005 to 2010, and the defendant joined the conspiracy in 2009. When did he join? What does the evidence show? That's the problem. The government can't point to when he joined the conspiracy. They're only saying we're going to use the date of 2009. That's the date, April 1st, 2009, that the wiretap went up. That's just the date that they're using arbitrarily. They can't point to an actual entering date. Secondly, the poll cam that was focused on the defendant's business was down for at least three months during that period that the government is saying he transported 114 aliens. Well, that's lucky for him, because it might have been 214. But it might have been 99, or it might have been. How could it be fewer? Because the government is not. There wasn't evidence. Wait a minute. They counted 114, but there wasn't any evidence for a period of time. So wouldn't that mean that was a floor and not a ceiling? No. They didn't do a real count of 114. They took the ---- Well, that's back to your question. They viewed the poll cam, and they looked at the wires, and they came up with a random number. Well, but that gets back to my question. What is wrong with an extrapolation method? It's used all the time, right? And so you've got to say that this extrapolation method was so inadequate such that there's clear error in relying on the extrapolation method. So what's wrong with this particular extrapolation method that was engaged in? Because of the disproportionate impact that this sentencing enhancement imposed upon the defendant's overall sentence, it needed to be proved by clear and convincing evidence to comport with due process demands. And a simple estimation, a bare rough estimate, is not in comport with that. And thus, the district court imposed ---- Well, the estimation is based on the agent's personal review of intercepted phone conversations, his review of the poll camera videos, his analysis of the high numbers of aliens smuggled through during certain months and the low numbers. And then based on all of that personal review of the evidence, he came up with the best estimate that he could as to how many aliens were smuggled through during this period from May 2009 through April 2010. What's wrong with that? And that admittedly has legal and illegal passengers intermingled. How is he coming up with this number? He never testified how he came up with it. He just said, I reviewed some poll cams, I reviewed some wires, not which ones, not which dates. He has no breakdown. He can't ---- Essentially, it's beyond cross-examination at that point because it's a number that's in his head and only in his head. And that number was then used to impose a severe ---- it quadrupled the defendant's sentence just by virtue of a number 114, which just so happens to be the highest threshold, is 100 and above. Counsel, do you want to save some time for rebuttal? I would. Thank you, Judge. Thank you. We'll hear from the government. May I please report? My name is Bruce Frueg, Assistant United States Attorney on behalf of the government in this case. First of all, I think the standard review is important here. The government, as indicated both by its brief and its 28-J letter, is of the view that based on this Court's precedence, the burden of proof for this enhancement was simply the ordinary preponderance of the evidence standard because, in fact, what we are talking about was a facet of the extent of the conspiracy, how many aliens were smuggled. And this Court has made it very clear in the Treadwell and the other cases I cited to you that when we're talking about a conspiracy so that we're really looking at all of the overt acts encompassed within that, the clear and convincing evidence standard, which is otherwise applied to large enhancements, doesn't apply, because basically he was convicted of the entire conspiracy. And so we're just talking about a factor within that. Satisfy my curiosity, if you would, sir. The conspiracy was charged as one single conspiracy, correct? Yes, sir. Was there a multiple conspiracy instruction given at the trial? In other words, what was the theory? Was the theory that all these folks were aware of each other, aware of the nature of the conspiracy, and for the most part the extent of the conspiracy? My recollection is that there wasn't a multiple conspiracy instruction because that was, in fact, the government's theory, is there was a particular – there was a civilian smuggling organization which the wiretap was designed to take down and which the case was designed to deal with. And there were like 15 or 20 people in the Tucson area and then a separately charged case in Phoenix. I understand. And so we're talking that the evidence that was primarily able to be developed was about this narrow transportation cell, which was essentially headed up by And so that's where most of the information was. But it was a much broader conspiracy that was actually charged. By the time the government went up on the wire, was it clear that this particular defendant was already involved in the transportation? My recollection is that there were some mentions of him, but we couldn't say that it was clear. That, in fact, was the reason why the wire was necessary, is that there were from indications that this was the breadth of the conspiracy. But until you could get the wire, you couldn't tell who was actually involved or to what extent. And so beginning when the wires began, which was in April, I believe, of 2009, that's when the actual affirmative evidence against each one was able to be developed. And that was, in effect, the basis for the determination of the very conservative number of 114. Was there any evidence specifically with regard to whether this defendant was involved by April of 2009 when the wiretap began? I'm not sure I follow the question. Evidence already? Was he part of the – was he discovered in the early wiretaps, I guess, is another way to put it. Yes. There are wiretap information, and I cited some of these actually in my brief on page 32, I believe, to show that there was evidence at least as early as mid-May or early May of 2009 that he was, in fact, involved. There were specific conversations, which were connected with surveillances and poll cam observations of particular people being delivered to his location and then being taken out, and conversations about how this was being done illegally. And also, it's important to recognize that when – since the 9-level enhancement is the real issue here and the validity of that, there were all these things that the agent was using, and the actual number for the entire conspiracy during the time that the wiretap was up, he testified, was just short of 1,800. So we're talking about the entire conspiracy for which Mr. Guillen-Cervantes is legally liable doing 1,800. And so what did he do? He went back and looked specifically at the particular incidents that could be corroborated, if you will, or connected, correlated between the wiretap conversations and the poll cam and the other kinds of surveillance that they were doing, and that's how he came up with 114. So this is a conservative number that's being derived. And how could he tell what was a legal versus the illegal person? There was testimony from several different agents and also from a fellow named Jesus Lopez Madrid, who actually was inside the Saguaro shuttle and knew Mr. Cervantes for a long time, testifying about this. And that is that, yes, there were some legal people, people with documents and so forth, who were being carried, but they were called retakings. They were basically leavening, just to put in there so that a driver, if he was stopped, had plausible deniability that he was conveying aliens, because, oh, here is Jesus who has his proper documentation. But there's no evidence that that was the majority of what Guillen-Cervantes was doing. And, rather, he had this business going where they were talking repeatedly about vans taking seven and nine at a time to Phoenix. You know, the problem, it seems to me, is the agent, Frazier, I believe his name is, speaks in very generic terms. We've been speaking in generic terms. What did you do? I looked at the poll cameras, the Title III. Specifically, what does that mean? How did that assist him in making this count? I looked at the wiretaps. I looked at the poll cameras. Explain. You know, the next question might have been, explain. Give me an example. How does that go from a general observation to a number? Well, he discussed this at the forfeiture hearing where the same question was at issue. How many? How much money do we treat you as accountable for so that we can forfeit it? How many do we treat you as accountable for as far as ultimately the sentencing? And so on page just, this is actually in Castillo's excerpts of record, because the cases were joined. We're looking at the records in all the excerpts from all three, at 186. And he was asked, if you take the 114 times the 2,000 average, does that get you to 228,000? That was the forfeiture number that was being discussed. And then he was asked how you link them to Rupert Tokey and Cervantes, tell us more about that. And he says it's the same methodology that he had used with Castillo. I compared the intercepted phone conversations. Yes, he did. He did exactly what we've been doing, speaking in very generic, nonspecific terms. What I'm asking you is that reference. What does that mean? What did he do? How did his observations and his review of the Title III facilitate his coming up with a number? Did he look at a person? Was he listening? This guy is coming in with a blue hat and an orange coat. He's the only one. Explain that to us, because otherwise we don't know. We don't know what to make of it other than it sounds legitimate, but we don't understand it. Well, this was essentially a repeat of the testimony that he gave at the trial, where it was summary. But at the trial, he testified for days, literally, about, okay, here, jury, we're looking at this poll cam video, and here is the audio, in effect, that goes with it, or the conversations that were wiretapped to relate to that, showing that this is what's happening. And so it had been accepted as an appropriate approach, evidentially, at the trial, and the same thing was done for the specific purpose for the forfeiture and sentencing proceedings. And he was able to tell that these were, in fact, illegals because of, first of all, there was clear testimony that the illegals typically were dressed very differently, heavy, dark clothes, often multiple layers. They were treated differently by the guides. They were being left outside in the back of the shuttle places rather than coming in the front door. None of the people that were discussed as being aliens, interestingly, ever used any of the adjoining services. There's a restaurant, there's a barbershop. They never went into any of those. And also the guides, who were typically dressed differently and were discernibly different, were directing these people, go here, go there, and these are the things that were observed on the Polo cans and which were verified by Madrid as being what was going on inside. And that's why I'm a little bit confused, because when you look at that evidence that was presented and you look at this testimony that you refer to on page 186, 187, it sounds to me like there was actually a physical count in coming up with the 114, that you correspond the pole camera to the conversations and then you know that there were six unlawful aliens transported that day, so that's six, and then the next day there were five, and then you physically kind of count them up and then you get to 114. It kind of sounds or it gave me that impression. But the government at various points during the hearing clarified that what Agent Frazier did was actually an extrapolation method. He reviewed it and he pulled all the evidence together and then he gave his best estimates as to the 114. So can you clarify for me, was it an extrapolation or was it actually physically counting up the 114 unlawful aliens transported during this time period that we're talking about? I didn't understand that this part of it, the actual number that he gave us, 114, which is obviously a very precise number, was an extrapolation. Rather that he was comparing, because the government's theory was that the defendant was guilty for or liable for everything that was done by the conspiracy, and particularly with regard to the amounts, that's why it was necessary to, in effect, get an average of the amount that was charged by the conspiracy for each alien transported and so forth. So my understanding was essentially what you said. That it's a count. Pardon me? That it's an actual count. Well, that's the specific number that he used. And, again, this was the same technique that he had used in the trial where he's saying, okay, here we have video of this incident on this date where they are transporting 2579, which is corroborated by these conversations. Oh, well, I delivered the 7 to Phoenix. And so that was my understanding, and I assumed it was the court's as well, that he was, from the findings that she gave, yes, you could, I think, reasonably do kind of an approximation of her and still have a legally acceptable number. That's what's done in drug cases, I guess. How many transactions were there were of typically such an amount and so forth. Thank you, counsel. I think you've exceeded your time by quite a bit, so we'll hear some rebuttal argument. Thank you. Thank you. I'd like to address a couple of points that the government brought up. For one, the government cited a few cases that deal with scope of the conspiracy type enhancements, but in both Riley and Treadwell, which are the two cases that the government really focuses on, those dealt with loss. They didn't deal with human beings. Money is dealt with in an approximation. Counsel, isn't the offense the conspiracy? Isn't that what your client was convicted of? That is true. Okay. So the offense, the conspiracy, clearly involved the smuggling of more than 100 illegal aliens. What's wrong with the government's argument that regardless of these questions about the precise count, there were well over 1,500 aliens who were smuggled in the course of this conspiracy? Why isn't that a sufficient answer? Judge, the government alleged 114 aliens. As I just conceded, that's an approximation. It's not a real number. The actual methodology is not a real number. What's the prejudice to your client if he's responsible for 1,500 or 1,800? The government needs to prove up, whether it be by preponderance or, in this case, a clear and convincing evidence standard. They need to prove up an enhancement. They can't just say, well, it's at least 1,500, so we're done. They need sufficient facts. And I think under both Rule 32 and 3553c, the district court would have to enunciate what facts the court is relying upon to arrive at the imposition of an enhancement or a sentence. And in the United States v. Jordan, there are six factors listed as to whether a sentencing enhancement needs to be imposed by clear and convincing or the lesser standard of preponderance. The first three aren't really applicable in this case. But the last three are, is it a conspiracy? In that case, the answer is yes. But the final two is, did it impose a sentence that doubled, and in this case it quadrupled, the defendant's overall sentence? And the last factor is, is it more than four levels? And in this case, it's nine levels. So I believe there's a heightened burden on the government, and they did not meet it. They did not meet a clear and convincing evidence. They didn't even meet a preponderance evidence standard. Thank you, counsel. Thank you. We appreciate the arguments that both of you have given today. Again, they've been most helpful. And the case is submitted. And we will stand adjourned for this morning's session.
judges: Dearie, Graber, Nguyen